THE VIRGINIAN. *

(Circuit Court of Appeals, Ninth Circuit. May 29, 1916.)

No. 2728.

COLLISION ⊜102—STEAM VESSELS MEETING—MUTUAL FAULT.

 A collision occurred in Puget Sound on a clear night between the meeting steamships Virginian and Strathalbyn. When about a mile apart the Strathalbyn gave a signal to pass port to port, and, receiving no answer, repeated it, porting each time. Both signals were heard on the Virginian, but her officers testified they could see no lights. After some time she stopped and reversed, but gave no signal until, shortly before collision, in answer to an alarm signal, she signaled that she was going astern. Held, that the Virginian was clearly in fault for not giving an alarm signal and reversing at once, when she failed to see the Strathalbyn's lights; that the latter was also in fault, it appearing that her side lights were either obscured by deck cargo or were so dim that they could not be seen for any distance.

 [Ed. Note.—For other cases, see Collision, Dec. Dig. ⊜102.]

Appeals from the District Court of the United States for the Southern Division of the Western District of Washington; Edward E. Cushman, Judge.

---

⊜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
*Rehearing denied October 23, 1916.

Suit in admiralty for collision by the Strathalbyn Steamship Company, Limited, as owner of the steamship Strathalbyn and bailee of a cargo of lumber, against the steamship Virginian, the American-Hawaiian Steamship Company, claimant, with cross-libel. From a decree dividing damages, both parties appeal. Affirmed.

For opinion below, see 217 Fed. 604.

W. H. Bogle, Carroll B. Graves, F. T. Merritt, and Lawrence Bogle, all of Seattle, Wash., for American-Hawaiian S. S. Co.

Huffer & Hayden and Ballinger, Battle, Hulbert & Shorts, all of Seattle, Wash., and Ira A. Campbell and McCutchen, Olney & Willard, all of San Francisco, Cal. (William Denman and Denman & Arnold, all of San Francisco, Cal., of counsel on rehearing), for Strathalbyn S. S. Co.

W. F. Sullivan, of San Francisco, Cal., for Shipowners' Ass'n of the Pacific Coast, amicus curiæ on rehearing.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

GILBERT, Circuit Judge. On the night of January 12, 1912, on the waters of Puget Sound, the Virginian, a large freight steamer, 492 feet long, 58 feet 3 inches beam, with a carrying capacity of 12,000 tons, came into collision with the Strathalbyn, a tramp steamer 387 feet long, 52 feet beam, with a carrying capacity of 7,200 tons. The facts as found by the court below are substantially as follows:

The Strathalbyn, proceeding northward from Tacoma, discovered immediately ahead and coming southward on her course the lights of two vessels. One was the Virginian, and the other was the Flyer, a passenger vessel on her way from Seattle to Tacoma. The Flyer was making 14 knots an hour, the Virginian 11, and the Strathalbyn 6 or a little more. The Flyer overhauled the Virginian, signaled to her, and passed her about 200 yards to starboard. The Virginian answered the signal, and the Strathalbyn heard both signals. About five minutes later the Strathalbyn blew one whistle to the Flyer, which was answered by the latter, and those vessels passed port to port. The Virginian heard these passing whistles, but the officers who were navigating her testified that they saw no lights of the Strathalbyn, and saw only the Flyer.

When the Strathalbyn and the Virginian were something less than a mile apart, the former blew one whistle to the Virginian as a signal to pass port to port. The pilot and the third mate of the Virginian, on the bridge, and the lookout, heard the whistle. They realized that it was a whistle intended for the Virginian, but they testified that they were unable to see any light or make out the approaching vessel. There was testimony that the Virginian's pilot then signaled that her engines be stopped, and that the captain, hearing the signal, came on the bridge and was informed of the reason for stopping the engines, and that they then heard a second single blast of the whistle of the Strathalbyn; but they still were unable, so they testified, to see any lights on that vessel. There was further testimony that the engines of the Virginian were reversed, and that about a minute after reversing the officers of the Virginian heard the danger signal, four blasts, from the other vessel. The captain of the Virginian then gave three whistles, to signify that his vessel was going full speed astern. Less than a minute thereafter the vessels came into collision

The officers in charge of the navigation of the Strathalbyn testified that when their vessel gave her first signal to the Virginian the red and green lights of the Virginian were plainly visible; that on giving that signal the helm of the Strathalbyn was ported a point or more; and that after waiting a minute, and hearing no answer from the Virginian, another single blast was blown, and the Strathalbyn's helm again ported and her engine stopped; that at that time the red light of the Virginian began to shut out and her green light to open, indicating that her course was directed across the Strathalbyn's bow; that, the Virginian making no answer, a minute later the Strathalbyn blew a third signal, and a minute and a half later reversed her engines; and they testified that the Virginian still came on, giving no signal until she blew three whistles in answer to the danger signal of the Strathalbyn.

The owners of each vessel filed libels against the other vessel, each claiming that the collision resulted from the negligence of the other. The court below found both vessels at fault; that the Strathalbyn was at fault in that her side lights were hidden to the Virginian as she approached, and that this was a proximate cause of the collision; that the Virginian was clearly at fault in not reversing her engines until less than a minute before the collision, and was in fault in failing to give the danger signal. Both parties to the suit have appealed, each claiming that its own vessel was without fault, that the collision was the result of the negligence of the other vessel, and that the court below erred in finding that both were at fault, and in dividing the damages.

It seems too clear to require discussion that the Virginian was in fault in proceeding on her course, and in not stopping and reversing her engines sooner than she did after hearing the signals of the Strathalbyn, and in not giving a danger signal. As to the contributing fault of the Strathalbyn the evidence is conflicting. No fault can be found with her navigation or her maneuvers; but there is substantial evidence that she was at fault, in that she was not equipped with proper side lights, that the lights were not ordinarily bright, and were not visible at as great a distance as they should have been, and that they were so placed or so obstructed by a deck load of lumber or otherwise that they were not discernible from all points ahead.

There is testimony of witnesses, it is true, who stated that the side lights of the Strathalbyn were distinctly visible, and there is evidence that those lights were seen by passengers on the Flyer while that vessel was passing the Strathalbyn, and that they were seen by others shortly before the collision. But, on the other hand, there is the evidence of the captain of the Flyer that he passed the Strathalbyn without seeing her side lights, and that he saw only her masthead lights, and there was testimony of others in other passing vessels tending to show that the side lights of the Strathalbyn were dim. It was in evidence that on the day of the collision the Strathalbyn's side lights had been changed, that prior thereto she had been using electric lights, and that, her dynamo having broken down, those lights had been removed and oil lamps substituted; and there was some evi-

dence tending to show that at least her masthead lamp burned dimly for want of ventilation.

The one strong, salient fact, which in this conflict of the evidence we think is controlling, is that the officers on board the Virginian who were responsible for her safety, and whose duty it was to navigate her and to respond to the signals of passing vessels, distinctly heard the Strathalbyn's signals, but were unable to discover her lights on a night which was dark and clear and free from fog. We think that the lights of the Strathalbyn must have been at that time either so dim as to be visible but a short distance, or placed in a position where their rays were obstructed or obscured by the cargo of lumber which was carried on deck, or by the stanchions which held the cargo in place.

We have carefully considered the evidence, and we are of the opinion that the decree disposes of the issues in accordance with substantial justice.

It is ordered that the decree be affirmed, and that the costs of the appeal be divided between the parties hereto.